## GEOGHEGAN v. CHATTERTON et al.

(Supreme Court, Appellate Division, First Department. June 15, 1906.)

1. BROKERS—SALE OF REAL ESTATE—COMPENSATION—SECURING OFFER—CONSTRUCTION OF CONTRACT.

A contract stipulated that the broker was "authorized to offer" certain property for sale, and in lieu of the usual brokerage "you are offered ten per cent. on the excess above $60,000." *Held* that, if the broker procured a purchaser willing to pay a sum in excess of $60,000, he was entitled to 10 per cent. of the amount accepted by the owners in excess of $60,000.

2. SAME—ACTION FOR COMPENSATION—EVIDENCE—SUFFICIENCY.

A complaint alleged an authorization to plaintiff to offer certain property for sale, he to be paid 10 per cent. on any amount above $60,000 realized; that within the time stipulated in the contract plaintiff procured an offer for $80,000, and advised defendants that more might be procured; that defendant sold the property for more than such offer, whereby plaintiff became entitled, etc. Under a written contract admitted by defendant, the broker was entitled to his commission if a purchaser was procured willing to pay a sum in excess of $60,000. It was also admitted that plaintiff notified defendants of an offer of $80,000, with an intimation that more could be secured, and that a sale for a larger sum was subsequently made by defendants to such purchaser. Plaintiff, in addition to referring to the written contract, testified that when the arrangement was made the service had been rendered, nothing more being contemplated; that the offer was communicated to advise defendants what the purchasers were willing to pay, and as information from the agent of the purchasers; that the money demanded was for information given; that his understanding was that within the stipulated time he was to come to an agreement with the purchaser for the price, and that he was not acting as broker in regard to the title. *Held*, not such a failure of proof of the cause of action set out in the complaint as to justify the taking of the case from the jury.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Patrick A. Geoghegan against Bertha W. Chatterton and another. From a judgment dismissing the complaint, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

James F. Higgins, for appellant.
W. Wickham Smith, for respondents.

PATTERSON, J. On the trial of this action, at the close of the plaintiff's case, the complaint was dismissed, evidently on the ground of the failure of proof of the cause of action set forth in the complaint. We are of the opinion that the ruling of the court in this regard was erroneous, and that the case should have gone to the jury. The action was brought upon a special contract, by which the defendants employed the plaintiff to render services in and about negotiations for the sale of real estate in the city of New York belonging to the defendants. The plaintiff was a real estate broker, and, according to the allegations of the complaint, his employment was somewhat special in its character. It is alleged in that pleading that in November, 1901, he was employed and authorized by the defendants to sell the defendants' property, and he was to be paid a commission of a certain percentage; that thereafter the plaintiff advised the defendants to purchase an adjoining piece of property, in order to make a larger plot, which could be more advantageously sold; that thereafter the plaintiff was employed by the defendants as brokers to sell the said property, and he made various efforts to sell the same; that on or about the 24th of May, 1904, "this plaintiff was duly authorized in writing by the defendants to offer the property 424 to 432 West 32d street for sale, and for his services it was agreed that this plaintiff was to be paid ten per cent. on any amount above sixty thousand dollars that might be realized, and an additional ten per cent. on any excess above named, to wit, one hundred thousand dollars, and which arrangement was by said agreement limited to fifteen days." It is then alleged in the complaint that the plaintiff, within 15 days after the date of the arrangement, procured an offer for the property of $80,000, and advised the defendants that they might be able to obtain more; that thereafter, upon advice from the plaintiff, the defendants sold the property to the Pennsylvania Railroad Company for $84,000, and the plaintiff became entitled, under the agreement, to 10 per cent. of $24,000, being the excess above $60,000. The defendants in their answer admit giving the authorization in writing to the plaintiff, of which the following is a copy:

"Confirming our conversation, you are authorized to offer the property 424 to 432 West 32d street for sale, and, in lieu of the usual brokerage, you are offered ten per cent. on the excess above sixty thousand dollars, and an additional ten per cent, on any excess above figure named, one hundred thousand dollars. This arrangement limited to say fifteen days, that is, must end a reasonable number of days, say ten, prior to date noted for hearing of condemnation proceedings."

The fair construction of the agreement is that the plaintiff was authorized to offer the defendants' real estate for sale, he to be paid for his services, if a purchaser were procured willing to pay a sum in excess of $60,000, a commission consisting of 10 per cent. on the amount accepted by the defendants in excess of $60,000, and an additional 10 per cent. on an amount exceeding $100,000. The defendants also ad-

mit in their answer that on May 27, 1904, which was within the period of 15 days, they were notified by the plaintiff that the representative of the Pennsylvania Railroad Company had made an offer of $800 per front foot, or $80,000 for the property. That was communicated to the defendants in a letter set forth in the answer, in which, among other things, it is stated:

"This does not include plottage. I have every reason to believe that if we desire to negotiate on any such basis, they would be willing to add ten per cent. for plottage, or about ninety thousand dollars for all."

The defendants also admit that they sold the property to the Pennsylvania Railroad, or parties representing it, for $84,000.

The plaintiff's cause of action was therefore based upon a contract by which the defendants agreed to pay for services for finding a purchaser for a price to be determined by the defendants at a minimum of $60,000, the compensation to be graduated according to the price received. The issue presented was as to the performance of that contract, and it is shown in the answer by the letter of the plaintiff to the defendants that an offer was procured of $80,000, which was submitted to the defendants, with an intimation that a larger figure possibly would be offered; and the defendants subsequently made a sale of the property to the purchaser procured by the plaintiff at an advance of some $4,000 over the amount reported by the plaintiff to the defendants as that which the railroad company would be willing to pay for the property.

On the trial the plaintiff testified that the defendants agreed to pay 10 per cent. on any amount they should receive between $60,000 and $100,000, and an additional 10 per cent. for any amount received over $100,000, and that the letter set forth in the answer of the defendants was written to confirm that verbal agreement. But on cross-examination he testified that when the arrangement was made the services had already been rendered, and it was not contemplated that anything was to be done in the future. However, he also said that when he communicated the offer of the railroad company to pay $80,000, that was done to advise the defendants what they were willing to pay at that time. He also testified that the representative of the railroad company said to him that he would pay $800 a front foot in the particular block in which the defendants' property was situated, and that was communicated to the defendants on information which he had received from Mr. Robinson, the representative of the railroad company; that the amount of money demanded by the plaintiff was for various information that he had given to the defendants; that his understanding was that within 15 days he was to come to an agreement with the Pennsylvania Railroad Company or its representatives for the price, and that he was not acting as a broker for the defendants for the sale of the real estate in regard to the title. Upon the cross-examination of the plaintiff the defendants built up the theory that the plaintiff considered that the agreement between the defendants and himself was that he was to be paid for antecedent services and advice, and that he did nothing after that communication was made in the way of procuring an offer except to go to the representative of the Pennsylvania Railroad Company, to whom he did not show any authority, and that he did not consider that such represent-

ative would deal with him, but would have his dealings direct with Mr. Chatterton, and that the representative of the railroad company said that they were giving $800 a front foot. But all that was elicited from the plaintiff on cross-examination does not nullify the contract the plaintiff made with the defendants. The terms of that agreement are admitted by the defendants. The plaintiff was to be paid for the services he rendered, and it is evident that after the 27th of May, and within 15 days therefrom, he procured an offer of $80,000 for the property, and communicated that offer to the defendants. It was not contemplated by the contract that the plaintiff should attend to any of the details of a contract, except to procure an offer over $60,000. The substance of the employment was undoubtedly to procure a purchaser, and that evidently was done; and after an offer of $80,000 had been obtained, with an intimation from the plaintiff that something more could be realized, the defendants took the transaction into their own hands with the purchaser with whom the plaintiff had been negotiating, and from whom the offer of $80,000 emanated, and the defendants closed the sale for $84,000.

We think this case should have gone to the jury on the testimony of the plaintiff as to what he did and in connection with the admissions of the defendants in their answer, and for that reason the judgment entered upon the nonsuit should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting). I think this judgment should be affirmed. Assuming that the letter written to the plaintiff by which the defendants were authorized to offer the property in Thirty-Second street for sale was to entitle the plaintiff to recover, it must appear that he performed some services in procuring a purchaser, or had something to do with the sale of the property. The arrangement was limited to 15 days. All that the plaintiff did, according to his own testimony, was to call upon a real estate broker representing the Pennsylvania Railroad Company, and was told by him that the railroad would pay $800 a front foot for any property in the neighborhood. The plaintiff testified that he knew before this arrangement that the railroad company was offering $800 a front foot on that street, and that the defendants could get that amount at any time they wanted to. He called on Douglas Robinson, the real estate broker who represented the railroad company, and his information as to the price that the railroad company was offering was confirmed. That fact he communicated to the defendants, and that was all that the plaintiff had to do with the matter. There was no sale consummated within the 15 days mentioned in the letter, and I do not think that anything that the plaintiff did was of the slightest advantage to the defendant, or had any relation to the final sale of the property. The employment of the plaintiff to effect a sale contemplated some act of his which contributed in some degree to the consummation of a sale, and this I think proof failed to show.

I think the complaint was properly dismissed.